1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>BUREAU OF LAND MANAGEMENT, et al.,<br><br>    Defendants. | Case No.  18-cv-00521-HSG<br><br>Re: Dkt. Nos. 15, 35, 46, 56 |
| SIERRA CLUB, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>RYAN ZINKE, et al.,<br><br>    Defendants. | Case No.  18-cv-00524-HSG<br><br>Re: Dkt. Nos. 15, 36, 47<br><br>**ORDER DENYING DEFENDANTS'<br>MOTIONS TO TRANSFER, DENYING<br>AS MOOT PLAINTIFFS' MOTION TO<br>STRIKE, AND GRANTING MOTIONS<br>TO INTERVENE** |

On January 24, 2018, the State of California and several environmental organizations ("California Plaintiffs") filed suit against Defendants the United States Bureau of Land Management ("BLM"); Joseph Balash, in his official capacity as the Assistant Secretary for Land and Minerals Management of the United States Department of the Interior; and Ryan Zinke, in his official capacity as Secretary of the Interior ("the Secretary"), asserting three claims for declaratory and injunctive relief under the Administrative Procedure Act ("APA"), the Federal Land Policy and Management Act, the Mineral Leasing Act, the Indian Mineral Leasing Act, and the National Environmental Policy Act.  Case No. 4:18-cv-00521-HSG, Dkt. No. 1 ("Cal. Compl.").  Also on January 24, 2018, a coalition of eight "citizen groups" ("Citizen Group Plaintiffs" or "Citizen Groups") asserted substantively similar claims against the Secretary, BLM, and the United States Department of the Interior.  Case No. 4:18-cv-00524-HSG, Dkt. No. 1.  On

April 3, 2018, Citizen Group Plaintiffs amended their complaint to add a claim under the Endangered Species Act ("ESA").  Case No. 4:18-cv-00524-HSG, Dkt. No. 55 at 32.

Apart from Citizen Groups' ESA claim, these related cases are substantively identical. Plaintiffs[1] challenge BLM's rescission of a 2015 regulation concerning hydraulic fracturing ("the HF Rule" or "the 2015 Rule") on public and tribal lands.  Plaintiffs contend that the 2015 Rule facilitated environmentally responsible oil and gas development, and that BLM's rescission of the rule violates the above listed statutes.  On May 2, 2018, the Court granted the State of Wyoming's ("Wyoming") unopposed motion to intervene in both cases.  *See* Dkt. Nos. 70, 33.  The Independent Petroleum Association of America and Western Energy Alliance (collectively, the "Associations") and the American Petroleum Institute ("API") have also moved to intervene in both actions.

On June 28, 2018, the Court heard argument on several motions pending in both actions, including motions to transfer, a motion to strike, and motions to intervene.  After carefully considering the parties' arguments, the Court rules as follows: (1) Defendants' motions to transfer are **DENIED**, Case No. 4:18-cv-00521-HSG, Dkt. No. 35, Case No. 4:18-cv-00524-HSG, Dkt. No. 36; (2) California Plaintiffs' motion to strike is **DENIED AS MOOT**, Case No. 4:18-cv-00521-HSG, Dkt. No. 56; and (3) the motions to intervene are **GRANTED**, Case No. 4:18-cv-00521-HSG, Dkt. Nos. 15, 46, Case No. 4:18-cv-00524-HSG, Dkt. Nos. 15, 47.[2]

## I.    MOTIONS TO TRANSFER

On March 21, 2018, Defendants moved to transfer these actions to the District of Wyoming.  Dkt. No. 35 ("Defs. Transfer Mot.").  On March 22, 2018, the Associations, as proposed-intervenors, filed a substantively similar "proposed" transfer motion.  Dkt. No. 37.  On April 4, 2018, Wyoming filed a "response" in support of Defendants' transfer motion.  Dkt. No. 55.  That same day, California Plaintiffs filed a consolidated opposition to the transfer motions and a request for judicial notice.  *See* Dkt. Nos. 53 ("Cal. Pls. Transfer Opp.") at 1 & n.1, 54.

---

[1] "Plaintiffs" refers collectively to California Plaintiffs and Citizen Group Plaintiffs.
[2] Unless otherwise noted, all docket references hereinafter will be to *State of California, et al. v. Bureau of Land Management, et al.*, Case No. 4:18-cv-00521-HSG, the earlier-filed action.

Separately, California Plaintiffs filed a motion to strike Wyoming's response to Defendants' transfer motion. Dkt. No. 56. On April 4, 2018, Citizen Group Plaintiffs also filed an opposition to the motions to transfer. Case No. 4:18-cv-00524-HSG, Dkt. No. 56 ("CG Pls. Transfer Opp."). On April 11, 2018, Defendants filed a reply in support of their transfer motion, Dkt. No. 57 ("Defs. Transfer Reply"), and the Associations filed a "proposed reply" in support of their transfer motion, Dkt. No. 58.

### i. Legal Standard

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). The purpose of this statute is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quotations omitted). The moving party bears the burden of showing that the transferee district is a "more appropriate forum." *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000). The district court has broad discretion in deciding whether to transfer an action. *See Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007).

The Court's transfer inquiry proceeds in two steps. First, the Court determines "whether the transferee district was one in which the action might have been brought by the plaintiff." *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960) (quotations omitted). If so, the Court conducts an individualized case-specific analysis of convenience and fairness. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quotations omitted). In this district, courts typically consider the following factors: (1) plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time to trial in each forum. *See, e.g., Ironworks Patents LLC v. Samsung Elecs. Co.*, No. 17-cv-01958-HSG, 2017 WL 3007066, at *2 (N.D. Cal. July 14, 2017); *Perez v. Performance Food Grp., Inc.*, No. 15-cv-02390-HSG, 2017 WL 66874, at *2 (N.D. Cal. Jan. 6, 2017); *Brown v. Abercrombie & Fitch Co.*, No. 4:13-cv-05205

YGR, 2014 WL 715082, at *2 (N.D. Cal. Feb. 14, 2014).[3]  "This list is non-exclusive, and courts may consider other factors, or only those factors which are pertinent to the case at hand."  *Martin v. Glob. Tel*Link Corp.*, No. 15-cv-00449-YGR, 2015 WL 2124379, at *2 (N.D. Cal. May 6, 2015).

### ii.    Discussion

#### a.    Venue is Proper in the District of Wyoming

Defendants argue that the District of Wyoming is the proper venue for this action.[4] Defendants contend that these cases could have been brought in that district under 28 U.S.C. Section 1391(e)(1)(A)-(B) because: (1) BLM "resides" there; and (2) a substantial part of the property involved in this action is situated there.  Defs. Transfer Mot. at 5.  California Plaintiffs dispute both premises, arguing primarily that the agency's maintenance of an office is not sufficient to establish venue.  Cal. Pls. Opp. at 6-7.  Defendants bear the burden of showing that venue in the District of Wyoming is proper.  *See Jones*, 211 F.3d at 499.

28 U.S.C. Section 1391(e)(1) sets forth the applicable standard.  That section states:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e)(1).

The parties acknowledge a lack of binding authority applying subsections (A) and (B) in analogous circumstances.  *See* Defs. Transfer Mot. at 5-6; Cal. Pls. Transfer Opp. at 6-7. Considering the specific facts presented here, the Court finds that Defendants meet their burden of

---

[3] These factors are also "[c]onsistent" with Ninth Circuit precedent.  *See Wilson v. Walgreen Co.*, No. C-11-2930 EMC, 2011 WL 4345079, at *2 (N.D. Cal. Sept. 14, 2011); *see also Jones*, 211 F.3d at 498-99 (listing examples of factors that courts may consider).

[4] The Associations do not address the propriety of venue in their proposed motion.  They address this issue for the first time in their reply.  *See* Dkt. No. 58 at 1-2.  In their opposition, Citizen Group Plaintiffs state only that they "support California's argument that this litigation could not have been brought in the District of Wyoming."  CG Pls. Opp. at 6.  Citizen Group Plaintiffs do not otherwise address the venue issue.

showing that this action could have been brought in Wyoming. It is undisputed that BLM has an office in that state, and manages substantial federal land there. *See* Defs. Transfer Mot. at 5-6; Cal. Pls. Opp. at 7. That office conducts a substantial amount of activity pertaining to oil and gas leasing, permitting, and oversight activities to which the HF Rule pertains. Dkt. No. 57, Ex. C ("Spencer Decl.") ¶¶ 3-7. These oil and gas activities are managed by the the the majority of the 716 Wyoming-based BLM employees. *Id.* at ¶¶ 3, 5-6. Wyoming also contains a significant amount of federal land potentially affected by rescission of the HF Rule. *See id.* ¶ 2; Dkt. No. 35, Ex. A ("Abernathy Decl.") ¶¶ 2-3 ("Wyoming is No. 1 in federal onshore gas production, and No. 2 in federal onshore oil production."). California Plaintiffs have not disputed, and courts in this district have found, venue in Wyoming under factually analogous circumstances. *See California v. United States BLM*, 2017 U.S. Dist. LEXIS 218901, *9-10 (N.D. Cal. Sept. 7, 2017) ("the 2017 Action") ("The Bureau of Land Management maintains offices and manages land in both California and Wyoming, so venue is proper in both jurisdictions."); *State of California, et al. v. Bureau of Land Mgmt.*, 286 F. Supp. 3d 1054, 1060 (N.D. Cal. 2018) ("the 2018 Action") (observing that the plaintiffs, including the State of California, did "not dispute that the District of Wyoming is a proper venue" in an action challenging a BLM rule governing waste from natural gas production).

### b. The Balance of the Transfer Factors Favor Plaintiffs

Even though this action could have been brought in the District of Wyoming, the balance of the transfer factors weighs against transferring the case there. Defendants claim that transfer would serve the interests of justice, avoid inconsistent judgments, and preserve judicial economy, emphasizing that the Wyoming district court oversaw a prior legal challenge to the HF Rule. Defs. Transfer Mot. at 6-11. Defendants also argue that the District of Wyoming has a stronger local interest in the controversy, as oil and gas production on federal lands in that state exceeds comparable production in California. *Id.* at 11. Defendants assert that the "convenience factors" are neutral, considering that either court will evaluate the merits of this APA action based on an administrative record. *Id.* at 12. The Associations advance substantively similar arguments in

their proposed motion.[5]

In response, Plaintiffs emphasize that substantial deference is typically accorded to a plaintiff's choice of forum. Plaintiffs also dispute that the interests of justice—including considerations of judicial consistency and economy—favor transfer. According to Plaintiffs, the Wyoming district court does not have special familiarity with the subject matter of this action, nor does Wyoming possess a greater local interest in this controversy as compared to California. Finally, Plaintiffs contend that the convenience and "time to trial" factors favor retaining jurisdiction here.

### 1. Plaintiffs' Choice of Forum

Plaintiffs are correct that, under the circumstances, their choice of forum is accorded "great weight." *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (finding that the plaintiffs' choice of forum is typically given deference, except in some cases involving derivative lawsuits and class actions); *Ctr. for Biological Diversity v. McCarthy*, No. 14-CV-05138-WHO, 2015 WL 1535594, at *3 (N.D. Cal. Apr. 6, 2015) ("Ordinarily, a plaintiff's choice of forum receives substantial deference, especially when the forum is within the plaintiff's home district or state."). This inquiry overlaps to some degree with each state's respective interest in this action: California, like Wyoming, contains considerable land under BLM's authority that is potentially affected by rescission of the HF Rule. *See* Cal. Compl. ¶¶ 11-15 ("In particular, BLM oversees 15 million acres of public lands (about 15% of the Golden State's total land mass) and 47 million acres of subsurface mineral estate."). Courts in this district have, on similar facts, emphasized the plaintiffs' choice of forum in declining to transfer venue to the District of Wyoming. *See State of California, et al.*, 286 F. Supp. at 1063 ("Though it is not a statutory requirement, the Supreme Court has placed a strong emphasis on the plaintiff's choice of forum."); *California*, 2017 U.S. Dist. LEXIS 218901 at *11 ("While this suit could have been brought in either court, Plaintiff's

---

[5] California Plaintiffs argue that the Court should decline to consider or strike the Associations' proposed motion, as the Associations are not yet parties to this action. *See* Dkt. No. 1 at n. 1. Even if the Court were to consider the Associations' proposed motion, it is not dispositive for this order given the significant substantive overlap between that motion and Defendants' transfer motion.

choice of forum is accorded substantial deference, especially where, as here, it is Plaintiff State of California's home forum."). In litigation over the propriety of another BLM rule, discussed in greater detail below, the court in the 2018 Action explained:

> This forum is home to the State of California, a state sovereign, which contains a significant amount of land that stands to be affected by the outcome of this litigation. While Defendants argue that the State of Wyoming has a larger amount of federal and Indian oil and gas development impacted by the Suspension Rule, this does not diminish California's real interest.

*State of California, et al.*, 286 F. Supp. 3d at 1063. Though not binding, the Court finds this reasoning persuasive. Defendants highlight that Wyoming has intervened here to protect its sovereign interests. *Cf. id.* (noting Wyoming's failure to represent its sovereign interest). But Wyoming's assertion of its interest in the outcome of this case does not diminish California's comparable stake, or the deference due to its choice to file in this district. Contrary to Defendants' suggestion, the Court is not persuaded that Plaintiffs are "forum shopping" in their home forum. *See Friends of Scotland, Inc. v. Carroll*, 2013 WL 1192956, *2 (N.D. Cal. Mar. 22, 2013) ("This order recognizes that there is no indication that plaintiff went 'forum shopping' by filing the instant action in its home forum"). This factor accordingly weighs strongly in Plaintiffs' favor.

### 2. Interests of Justice

Defendants emphasize that the interests of justice, including judicial consistency and economy, favor transfer. With regard to judicial consistency, Defendants argue that awarding Plaintiffs a component of their requested relief (that is, reinstatement of the HF Rule) risks contravening the Wyoming district court's holding in *State of Wyoming v. United States Dep't of the Interior* ("the Wyoming Action"), No. 2:15-cv-041-SWS, 2016 WL 3509415, at *1 (D. Wyo. June 21, 2016), *judgment vacated, appeal dismissed sub nom. Wyoming v. Zinke*, 871 F.3d 1133 (10th Cir. 2017). *See* Defs. Transfer Mot. at 7-8. In the Wyoming Action, the district court found that BLM lacked statutory authority to enact the HF Rule. *See Wyoming*, 2016 WL 3509415, at *1. In addition, Defendants contend that transfer will preserve judicial economy because the Wyoming district court is already familiar with the HF Rule, having presided over the Wyoming Action. Defs. Transfer Mot. at 8-11. In making this latter claim, Defendants emphasize the volume and extent of the administrative record lodged in the Wyoming Action. *See id.*

Given the posture of the Wyoming Action, the Court is not convinced that there is any risk of inconsistent judgments. The Tenth Circuit recently vacated the court's holding in the Wyoming Action. *See Zinke*, 871 F.3d at 1146. In doing so, the Tenth Circuit found that the plaintiffs' appeals were prudentially unripe as a result of BLM's rescission of the HF Rule. *See id.* On June 4, 2018, the Tenth Circuit issued a corresponding mandate to enforce its judgment. *See* Dkt. No. 73 ("Defendants' Statement of Recent Decision"). Thus, there is no standing decision of the Wyoming district court for this Court to contravene.

Defendants contend that there is still an implied risk of judicial inconsistency. But other courts in this district have rejected that argument. Here too, the reasoning set forth in the 2018 Action is compelling. *See State of California, et al.*, 286 F. Supp. 3d at 1058-59. In that case, the court considered the propriety of BLM's "suspension rule," which BLM developed "to delay for one year the effective date" of the BLM's earlier "waste prevention rule." *See id.* BLM intended the waste prevention rule "to reduce waste of natural gas from venting flaring, and leaks during oil and natural gas production activities on onshore Federal and Indian (other than Osage Tribe) leases." *Id.* (quotations omitted). Following the waste prevention rule's promulgation, Wyoming, Montana, and the Associations (proposed-intervenors in this action) challenged that rule in the Wyoming district court. The Wyoming district court then stayed the case before it, observing that it was "inextricably intertwined" with the 2018 Action's outcome. *Id.* at 1061-62.

Despite the actions' substantive overlap, the court in the 2018 Action declined to transfer the case to the District of Wyoming. In reaching that holding, the court rejected the inconsistency argument set forth here:

> [T]his case and the *Wyoming* litigation involve separate legal issues. That the subject matter at the heart of both of these actions is the same is hardly grounds for transfer. Indeed, many cases may arise from a single rule or statute. But Section 1404(a) was designed to prevent a situation in which two cases involving *precisely the same issues* are simultaneously pending in different District Courts. It is not enough that these cases deal with and require me to become familiar with the substance of the Waste Prevention Rule; instead, Defendants must show that the two cases present the same legal questions so that litigating them separately would be a waste of judicial resources. This Defendants cannot do.

8

*Id.* at 1061 (quotations and citations omitted) (emphasis in original). That court's reasoning

applies here with equal force. The issue before this Court—the legality of BLM's rescission of the

HF Rule—was not presented to or reached by the court in the Wyoming Action. *See* Cal. Pls.

Transfer Opp. at 13. The question in the Wyoming Action, whether BLM had statutory authority

to enact the HF Rule, has not been presented this Court. Discrete legal and factual

considerations accordingly flow from these issues, considering especially that the allegedly

unlawful conduct in this action occurred after BLM's enactment of the HF Rule.

For related reasons, Defendants' judicial economy argument fails. Though there are some

broadly related factual subject matter areas underlying the HF Rule and the rule rescinding it,

these commonalities are unlikely to save either court considerable time. The court in the 2017

Action, in evaluating a challenge to another BLM rule, found unconvincing the same argument

Defendants set forth here:

> However, judicial economy does not favor transfer because there is
> no overlap between this case and the litigation in the District of
> Wyoming. This case concerns an agency action in which
> Defendants postponed compliance dates under Section 705 after the
> effective date had passed. By contrast, the District of Wyoming
> litigation challenges a different agency action, the BLM's
> promulgation of the Rule, published on November 18, 2015, as
> exceeding its authority under the operative statute. Thus, this case
> concerns a completely distinct, purely legal question about
> Defendants' authority to postpone the compliance dates
> under Section 705. The extent of Defendants' authority
> under Section 705 is not at issue in the District of Wyoming case,
> as Section 705 was not invoked.

*See California*, 2017 U.S. Dist. LEXIS 218901, at *13. Defendants, moreover, acknowledged

before the Tenth Circuit that this case involves different issues than the Wyoming Action, opining

that "the California cases will decide *only* whether the Rescission Rule is valid, and do not present

the question whether BLM had authority to promulgate the 2015 Hydraulic Fracturing Rule." *See*

Dkt. No. 54-1, Ex. 2 ("Torgun Decl.") (emphasis in original).[6] Partly in view of Defendants' prior

stance, the Court concludes that any time and efficiency savings from transfer will be minimal.

---

[6] California Plaintiffs request judicial notice of this publicly filed letter. Dkt. No. 54. The Court
**GRANTS** the request insofar as the Court acknowledges the letter's existence and Defendants'
position on the interaction of these cases. *See Mir. v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649
(9th Cir. 1988).

### 3. Convenience Factors

Plaintiffs argue that the convenience factors weigh in their favor. The Court agrees. If this action were transferred to Wyoming, Plaintiffs would need to incur additional travel costs, complete extra paperwork associated with that travel, secure local counsel, and seek *pro hac vice* admission. Cal. Pls. Opp. at 11-12. In contrast, D.C.-based counsel for the U.S. Government Defendants are exempt from both districts' local counsel requirements, and will bear out-of-state travel costs irrespective of whether this action remains here or is transferred to Wyoming. *See California*, 2017 U.S. Dist. LEXIS 218901, *15 ("On the other hand, Wyoming and California are equally convenient for Defendants, as they are primarily based in Washington, D.C. . . . and, further reducing their burden, Defendants' counsel is exempt from both jurisdictions' local counsel requirements."); N.D. Cal. Civ. L.R. 11-2; Wyo. Civ. L.R. 84.2(d). Any arguments concerning Wyoming's convenience are unpersuasive, given that Wyoming affirmatively intervened in this case.

Defendants assert that the convenience factors are neutral because there are no witnesses in this case, and a trial is not anticipated. *See* Defs. Transfer Reply at 8. Even assuming that Defendants are correct, Plaintiffs will need to make further appearances relating to the parties' dispositive motions. That Plaintiffs may need to travel to Wyoming for related actions does not reduce the inconvenience associated with transfer. *See California*, 2017 U.S. Dist. LEXIS 218901 at *15 ("Litigating this case in California is more convenient for the Plaintiffs, many of whom are located in California including the State of California and most of the conservation and tribal groups. This remains true even though the State of California is going to the extra expense of making an appearance as an intervenor in the District of Wyoming litigation."); *accord State of California, et al.*, 286 F. Supp. 3d at 1061 ("That most of the plaintiffs in this matter are litigating a case in the District of Wyoming does not somehow mean that litigating a second case there is not an additional burden or inconvenience to them."). Defendants cannot carry their burden where "transfer would merely shift rather than eliminate the inconvenience." *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

### 4. Other Factors

The other transfer factors either weigh in Plaintiffs' favor or are neutral.[7]  As discussed, the Wyoming district court's familiarity with the HF Rule is not dispositive given the discrete issues presented in this case.  As to the local interest in the controversy, both California and Wyoming have a real stake in this litigation.  As other courts have found, that Wyoming has an interest in this action's outcome does not nullify California's choice to litigate here.  *See State of California, et al.*, 286 F. Supp. 3d at 1063; *California*, 2017 U.S. Dist. LEXIS 218901 at *16 ("This forum's local interest in the controversy is a neutral factor, as both California and Wyoming have substantial federally-managed mineral estate and oil and gas production. . . the fact that another forum also has an interest in the outcome of this dispute does not override Plaintiff's choice to litigate in this forum.").  Finally, relative court congestion and the time to disposition marginally favor Plaintiffs.  The parties agree that it takes approximately three months longer for a case to reach disposition in the District of Wyoming as compared to this district.  Defs. Transfer Mot. at 13; Cal. Pls. Transfer Opp. at 19.  Though not alone sufficient, this factor is adequate in combination with others for the Court to decline Defendants' transfer request.[8]

## II.    MOTIONS TO INTERVENE

Also pending before the Court are two motions to intervene.  The first motion, filed by the Associations, is unopposed.  Dkt. No. 15 ("Ass'n Interv. Mot."); *see* Dkt. No. 36 (Defendants' "Notice Regarding Non-Opposition to Motions to Intervene").  The second motion, filed by API, is opposed, but only to the extent that the Court allows API to file a stand-alone summary judgment brief.  Dkt. No. 46 ("API Interv. Mot."); *see* Dkt. No. 59 ("Cal. Non-Opp. to API Interv.") at 2; *see also* Case No. 4:18-cv-00524-HSG, Dkt. No. 61 ("CG Resp. to API Interv.").  Plaintiffs do not oppose API's intervention if it is required to file a consolidated brief with the Associations.  *See* API Interv. Mot. at ii; Cal. Non-Opp. to API Interv. at 2; CG Resp. to API

---

[7] Defendants do not argue that the transfer analysis is impacted by the feasibility of case consolidation.

[8] California Plaintiffs also move to strike Wyoming's "response" in support of transfer.  *See* Dkt. No 56.  California Plaintiffs argue that Wyoming's response is procedurally improper under Civil Local Rule 7-3.  *Id.* at 1-2.  The Court **DENIES AS MOOT** the motion: even if the Court were to consider it, Wyoming's rationales for transfer overlap substantially with those set forth by Defendants.  For the reasons stated, the Court does not find these arguments persuasive.

Interv. at 2.

### i. Legal Standard

Federal Rule of Civil Procedure ("Rule") 24(a) governs intervention as of right.  The rule

is "broadly interpreted in favor of intervention," and requires a movant to show that

> (1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest.

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (citing

*Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006)).  Courts deciding motions to intervene as of

right are "guided primarily by practical considerations, not technical distinctions."  *See id.*

(quoting *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001)); *see also*

*U.S. v. City of L.A.*, 288 F.3d 391, 397 (9th Cir. 2002) (stating that "equitable considerations"

guide determination of motions to intervene as of right) (citation omitted).

Rule 24(b) governs permissive intervention.  The Ninth Circuit has interpreted the rule to

allow permissive intervention "where the applicant for intervention shows (1) independent

grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the

main action, have a question of law or a question of fact in common."  *City of L.A.*, 288 F.3d at

403 (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996)).  "In

exercising its discretion" on this issue, "the court must consider whether the intervention will

unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

### ii. Discussion

The Associations argue that they can intervene as of right because: (1) their motion is

timely filed prior to any deadlines for substantive briefing; (2) they represent "thousands of

independent oil and natural gas explorers and producers," as well as their suppliers, and therefore

have an interest in this proceeding; (3) their members will suffer from heightened regulatory

burdens if the Court grants Plaintiffs their requested relief; and (4) their interests differ from

federal defendants because they have a "direct economic stake" in this controversy.  *See* Ass'n

Interv. Mot. 7-11.

API's rationale for intervention is similar. API argues that intervention as of right is appropriate because: (1) API's motion precedes all substantive deadlines in this action; (2) API, as a national trade association that represents more than six hundred oil and gas companies, has a significant economic and financial interest in this litigation that is threatened by Plaintiffs' requested relief; and (3) the governmental entities already party to this case will not represent their interests. *See* API Interv. Mot. at 3-7. In addition, API contends that the Associations cannot adequately represent the interests of its members. *See id.* at 8. According to API, their membership is broader than that of the Associations, and includes "service and supply companies, petroleum refiners, pipeline companies, LNG exporters, petroleum shippers, steel makers, and other sectors of the industry that are not members of these other organizations." *Id.* In addition to seeking intervention as of right, API contends that the Court should permit API to permissively intervene under Rule 24(b).

The Courts agrees with the Associations and API. Both groups have demonstrated a substantial interest in this litigation that is not adequately represented by the existing parties, and that is threatened by rescission of the HF Rule. Plaintiffs do not oppose the Associations or API's substantive rationales for intervention. In analogous circumstances, other courts in this district have allowed API and other interest groups to separately intervene under Rule 24(a) and (b). *See State of California, et al.*, No. 3:17-cv-07186-WHO, Dkt. No. 90. In addition to granting these groups' requests for intervention, the court in the 2018 Action allowed these entities to "file separate supplemental briefing and to participate in the hearing." *See id.*

To that end, Citizen Group Plaintiffs do not present binding authority that supports limiting a party's briefing once intervention is granted. Rather, Citizen Groups primarily rely on API and the Associations' purportedly similar ideological and economic interests. But these alleged similarities suggest that one additional set of briefs will not be substantially more onerous to consider. Accordingly, the Court in its discretion declines to limit all the industry group intervenors to one set of briefs.

### III.    CONCLUSION

For these reasons, the Court **DENIES** the motions to transfer, **DENIES AS MOOT**

California Plaintiffs' motion to strike, and **GRANTS** the motions to intervene. The Court **SETS** a further case management conference for Tuesday, August 21, 2018 at 2:00 p.m. to discuss the parties' proposed case schedule.

      **IT IS SO ORDERED.**

Dated: 7/17/2018

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge