UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA, et al., <br> Plaintiffs, <br> v. <br> BUREAU OF LAND MANAGEMENT, et al., <br> Defendants. | Case No. 18-cv-00521-HSG <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTIONS TO COMPLETE AND/OR SUPPLEMENT THE ADMINISTRATIVE RECORD** <br><br> Re: Dkt. No. 86 |
| SIERRA CLUB, et al., <br> Plaintiffs, <br> v. <br> RYAN ZINKE, et al., <br> Defendants. | Case No. 18-cv-00524-HSG <br><br> Re: Dkt. No. 85 |

On January 24, 2018, the State of California, by and through its Attorney General Xavier Becarra ("California Plaintiff"), filed suit against Defendants the U.S. Bureau of Land Management ("BLM"); Joseph Balash, in his official capacity as the Assistant Secretary for Land and Minerals Management of the U.S. Department of the Interior; and Ryan Zinke, in his official capacity as Secretary of the Interior ("the Secretary"), asserting claims for declaratory and injunctive relief under the Administrative Procedure Act ("APA"), the Federal Land Policy and Management Act, the Mineral Leasing Act, the Indian Mineral Leasing Act, and the National Environmental Policy Act. Case No. 4:18-cv-00521-HSG, Dkt. No. 1. The same day, a coalition of eight "citizen groups" ("Citizen Group Plaintiffs" or "Citizen Groups") asserted substantively similar claims against the Secretary, BLM, and the U.S. Department of the Interior. Case No.

4:18-cv-00524-HSG, Dkt. No. 1. On April 3, 2018, Citizen Group Plaintiffs amended their complaint to add a claim under the Endangered Species Act. Case No. 4:18-cv-00524-HSG, Dkt. No. 55 at 32. The Court subsequently granted intervention to the State of Wyoming, the Independent Petroleum Association of America and Western Energy Alliance, and the American Petroleum Institute. *See* Dkt. Nos. 70, 77.[1]

Now pending before the Court are Plaintiffs'[2] motions to complete or supplement the administrative record, briefing for which is complete. *See* Case No. 4:18-cv-00521-HSG, Dkt. Nos. 86 ("Mot."), 92 ("Opp."), 93 ("Reply"); Case No. 4:18-cv-00524-HSG, Dkt. Nos. 85, 90, 91. After carefully considering the parties' arguments, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motions.

## I. BACKGROUND

In March 2015, BLM issued the final version of a regulation concerning hydraulic fracturing on public and tribal lands. *See* Oil and Gas; Hydraulic Fracturing on Federal and Indian Lands, 80 Fed. Reg. 16,128 (March 26, 2015) ("the 2015 Rule"). Immediately after the 2015 Rule's publication, a combination of states, industry groups, and the Ute Indian Tribe sought judicial review of the 2015 Rule under the APA. *See Wyoming v. U.S. Dep't of the Interior*, 136 F. Supp. 3d 1317, 1326–27 (D. Wyo. 2015) *vacated and remanded sub nom. Wyoming v. Sierra Club*, Nos. 15-8126, 15-8134, 2016 WL 3853806 (10th Cir. July 13, 2016). In that case, the district court issued a nationwide preliminary injunction preventing BLM from enforcing the 2015 Rule. *Id.* at 1354. BLM appealed that decision to the Tenth Circuit.

On March 9, 2017, while the case was still pending, the Tenth Circuit issued an order that stated: "Given the recent change of Administration and the related personnel changes in the Department of Justice and the Department of Interior, the [Tenth Circuit was] concerned that the briefing filed by the Federal Appellants in these cases may no longer reflect the position of the

---

[1] Relevant filings in the two cases—including all papers in the pending motions—are substantively identical. Unless otherwise specified, all docket references are to the earlier-filed case, *State of California, et al. v. Bureau of Land Management, et al.*, Case No. 18-cv-00521-HSG.

[2] "Plaintiffs" refers collectively to the California Plaintiff and Citizen Group Plaintiffs.

2

1  Federal Appellants." Order 2–3, *Wyoming v. Zinke*, Nos. 16-8068, 16-8069 (10th Cir. Mar. 9,
2  2017), Doc. No. 01019776687. The circuit court in turn directed BLM "to confirm whether their
3  position on the issues presented remain[ed] the same, or [had] changed." *Id.* at 3. Six days later,
4  BLM informed the court that the 2015 Rule did not reflect the new Administration's "policies and
5  priorities" and that the agency intended to rescind the 2015 Rule. *See* Federal Appellants' Motion
6  to Continue Argument and Hold Case in Abeyance Pending Administrative Action 2–3, *Wyoming*
7  *v. Zinke*, Nos. 16-8068, 16-8069 (10th Cir. Mar. 15, 2017), Doc. No. 01019780139. By December
8  2017, BLM completed the 2015 Rule's rescission. *See* Oil and Gas; Hydraulic Fracturing on
9  Federal and Indian Lands; Rescission of a 2015 Rule, 82 Fed. Reg. 61,924 (Dec. 29, 2017) ("the
10 2017 Rule"). The 2017 Rule explained that BLM rescinded the 2015 rule, in part, to "eliminate[]
11 the need for further litigation about BLM's statutory authority." *Id.* at 61925. The present suits in
12 which Plaintiffs challenge BLM's rescission of the 2015 Rule followed.
13    As is necessary for this litigation, the Federal Defendants lodged an administrative record
14 for the 2017 Rule. Dkt. Nos. 83–84. The Federal Defendants later lodged an amended record.
15 *See* Dkt. Nos. 95–96. Plaintiffs seek to compel BLM to include nine additional documents in the
16 administrative record, all of which are documents BLM released in response to Freedom of
17 Information Act ("FOIA") requests for agency staff's communications "related to the 2015 Rule
18 and the litigation over it." *See* Mot. at 5.

19 **II.     LEGAL STANDARD**

20    Judicial review of an agency decision is limited to "the administrative record already in
21 existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S.
22 138, 142 (1973). The administrative record is "not necessarily those documents that the agency
23 has compiled and submitted as 'the' administrative record." *Thompson v. U.S. Dept. of Labor*,
24 885 F.2d 551, 555 (9th Cir. 1989) (internal citation omitted). Instead, it must be "the whole
25 record," which "includes everything that was before the agency pertaining to the merits of its
26 decision." *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir.
27 1993) (internal citation omitted). The "whole record" thus encompasses "all documents and
28 materials directly or indirectly considered by agency decision-makers and includes evidence

3

contrary to the agency's position." *Thompson*, 885 F.3d at 555 (internal citation omitted).

The administrative record before the agency, however, does not include "every scrap of paper that could or might have been created." *Bay.org v. Zinke*, No. 1:17-cv-01176 LJO-EPG, 2018 WL 3965367, at *3 (E.D. Cal. Aug. 16, 2018) (quoting *TOMAC v. Norton*, 193 F. Supp. 2d 182, 195 (D.D.C. 2002)). Also, an agency's designation and certification of the administrative record as complete is entitled to a "presumption of administrative regularity." *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007) (citing *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993)). In turn, courts presume administrative records are complete, but plaintiffs can rebut this presumption with "clear evidence to the contrary." *In re United States*, 875 F.3d 1200, 1206 (9th Cir. 2017) (citing *Bar MK Ranches*, 994 F.2d at 740), *vacated on other grounds*, 138 S. Ct. 443 (2017)).

## III. DISCUSSION

Plaintiffs move the Court to compel Federal Defendants to include nine documents in the administrative record. *See* Dkt. No. 86-1 ("Freeman Decl.") (identifying and attaching the nine documents). Plaintiffs contend that these documents fall into three categories that merit inclusion: (1) "Documents reflecting Secretary Zinke's and his political appointees' direct involvement in the March 2017 decision to reverse course in the Tenth Circuit and proceed with repealing the 2015 Rule (Documents 4 and 6)"; (2) "Documents relating to meetings and communications in early 2017 between Secretary Zinke's political appointees and oil and gas industry trade associations and other lobbyists who sought to eliminate the 2015 Rule (Documents 3, 5, 7, 8, and 9)"; and (3) "Congressional testimony explaining the need for the 2015 Rule, which was reviewed by agency staff later involved with the 2017 Repeal (Documents 1 and 2)." *See* Mot. at 7.

Federal Defendants respond that the Court should not compel inclusion of these documents, because (1) Documents 4, 7, and 9 are merely calendar entries; (2) Document 8 contains no substance; (3) Documents 3, 5, and 6 only relate to litigation; and (4) Documents 1 and 2 predate the 2017 rulemaking by over 18 months. Opp. at 6–8.

//

4

## A. Calendar Entries are Not Part of the Administrative Record.

Documents 4, 7, and 9 are calendar entries that reflect (1) a March 15, 2017 meeting involving Secretary Zinke and Department of Interior employees "re: Fracking Rule"; (2) a March 10, 2017 meeting involving Department of Interior and BLM employees regarding "UTE Tribe Litigation Regarding Fracking Rule"; and (3) a February 27, 2017 meeting involving Department of Interior employees and the American Petroleum Institute. Freeman Decl. Ex. B, Docs. 4, 7, 9. The entries otherwise include no substance, and the Federal Defendants accordingly contest their inclusion in the administrative record, as they "contain no information or analysis that the agency could have considered." Opp. at 6–7.

Plaintiffs contend that these calendar entries are necessary "for the administrative record to present an accurate and complete account of the Federal Defendants' decisionmaking process." Mot. at 11. And to this end, Plaintiffs rely on five non-binding cases for the principle that "[c]ourts have recognized that references to meetings are properly included in the administrative record as evidence of verbal input that agency decisionmakers received in the course of reaching a decision." *See, e.g.*, Reply at 3–4.

Beyond the fact that these cases are not binding on this Court, the Court disagrees with Plaintiffs' characterization of their holdings. First, in *California ex rel. Lockyer v. United States Department of Agriculture*, the court ordered an agency to complete the administrative record with broad swaths of material "relating to the decision-making process," such as "correspondence[s] between and among the parties involved, e-mail messages, agency meeting notices, draft analyses, assessments of alternatives and discussions of the impacts of scientific uncertainties on the selection of each alternative." Nos. C05-03508 EDL, C05-04038 EDL, 2006 WL 708914, at *3 (N.D. Cal. Mar. 16, 2006). But that court's passing reference to "agency meeting notices" does not mean—as Plaintiffs here suggest—that the court ordered inclusion of documents lacking any substance. Rather, that court was faced with the wholescale exclusion by the agency of "indirectly considered" documents, and the order tailored a broad remedy for that broad error. *See id.* Second, the court in *Open Spirit, LLC v. United States* held that an electronic "meeting reminder" that "contain[ed] no text aside from the location of the meeting" must be in the administrative

record. 131 Fed. Cl. 756, 781 (2017). But the Court there only held that the reminder was necessary because it "form[ed] a basis for Plaintiff's claim of bias." *Id.* Here, Plaintiffs contend that the calendar entries were "considered" by relevant persons. *See* Reply at 4. But there is nothing in the disputed entries to consider. Third, *Water Supply & Storage Co. v. United States Department of Agriculture* involved the inclusion of substantive notes from a meeting, which "reflect[ed] agency thoughts and plans" on "vital" matters. 910 F. Supp. 2d 1261, 1267–69 (D. Colo. 2012). That is irrelevant to the present case, because the calendar entries lack any substance at all. *Cf. id.* Fourth, in *Google, Inc. v. United States*, the court conducted no analysis of whether "email records demonstrating that meetings occurred" must be included in the administrative record, as plaintiffs represent. 95 Fed. Cl. 661 (2011); Reply at 3–4. Rather, the Court there mentioned an email that was already in the administrative record, which happened to reference a meeting. 95 Fed. Cl. at 680. That case thus provides no guidance for the present dispute.

The parties' primary dispute over calendar entries' inclusion in the administrative record concerns Plaintiffs' fifth case: *Regents of the University of California v. United States Department of Homeland Security*, Nos. C 17-05211 WHA, C 17-05235 WHA, C 17-05329 WHA, C 17-05380 WHA, C 17-05813 WHA, 2018 WL 1210551 (N.D. Cal. Mar. 8, 2018) (*Regents II*). *See* Mot. at 9; Opp. at 7; Reply 4–5. *Regents II* concerned the Acting Secretary of the Department of Homeland Security's decision to terminate what is known as Deferred Action for Childhood Arrivals ("DACA"). 2018 WL 1210551, at *1. And the court there grappled with the unsettled issue of how to ensure that the administrative record reflects verbal input to agency decisionmakers. *Id.* at *4. The court observed that although "appellate caselaw has never expressly considered" the matter, "[v]erbal input, of course, can be every bit as influential— perhaps more influential—in shaping informal agency decisions as written input." *Id.* Despite that truism, the administrative record there "omit[ted] even a clue as to the verbal advice received by the Acting Secretary on the question of the rescission of DACA." *Id.* The court accordingly ordered the defendants "to corral the records that plausibly informed the verbal input received by the Acting Secretary." *Id.*

Plaintiffs characterize the *Regents II* court as having "ordered the federal defendants to

complete the administrative record with documents showing which persons 'provided verbal input regarding the rescission of DACA.'" Reply at 4 (citing *Regents II*, 2018 WL 1210551, at *3–4). Not so. That excerpt, in full, shows the court ordered the federal defendants to "add to the administrative record *documents* of the Acting Secretary's first-tier subordinates who provided verbal input regarding the rescission of DACA." *Regents*, 2018 WL 1210551, at *4 (emphasis added). In other words, the court was concerned with corralling documents "considered by" subordinates "who thereafter provided the Acting Secretary with verbal input regarding the actual or potential rescission of DACA." *Id.* at *4–5. Had Plaintiffs here sought to complete the administrative record with substantive documents considered by persons at meetings reflected in the calendar entries presently under dispute, then the Court might agree that *Regents II* would be persuasive support for Plaintiffs' position. But the Court is not faced with that issue.

The Court is aware of no case to confront the narrow issue presented here: whether calendar entries lacking any substance must be included in the administrative record. The Court accordingly returns—as it must—to the fundamental inquiry of whether the disputed calendar entries constitute "documents and materials directly or indirectly considered by agency decision-makers." *See Thompson*, 885 F.3d at 555. It strains credulity to suggest that any person, in any real sense, "considered" a calendar entry in either making a decision or providing input to a decisionmaker. Again, people at meetings very well could have had substantive documents they considered in providing verbal input, which then might constitute information "indirectly considered by the agency decision-makers," but a calendar entry is not such a document.

**B.    Document 8 Should be Part of the Administrative Record.**

Document 8 is a briefing memorandum for Secretary Zinke, dated April 25, 2017, with the subject "Western Energy Alliance," the name of an intervening party in this action. Freeman Decl. Ex. B, Doc. 8. Unlike the calendar entries just discussed, Document 8 contains more than a page of substantive discussion that, in part, covers the hydraulic fracturing regulatory matters. *Id.* In opposition to Document 8's inclusion in the administrative record, Federal Defendants concede that Secretary Zinke "considered" the memorandum. Opp. at 7 (noting that "Environmental Plaintiffs' proposed document 8 is a briefing memorandum considered by Secretary Zinke for a

1  meeting covering diverse issues with the Western Energy Alliance"). They nevertheless contend

2  that this document "contains no substantive content that the agency could have considered in the

3  2017 rulemaking process." *Id.* Having reviewed the memorandum, the Court disagrees. And

4  given that the Federal Defendants admit the Secretary considered the disputed memorandum, the

5  Court finds there is "clear evidence" that this document should be in the Administrative Record.

6  *See In re United States*, 875 F.3d at 1206.

### C. Documents Related to the Tenth Circuit Litigation are Not Part of the Administrative Record.

Documents 3, 5, and 6 relate to the Tenth Circuit litigation, such as emails discussing settlement meetings and an email from a lobbyist. Freeman Decl. Ex. B, Docs. 3, 5, 6. The Federal Defendants oppose inclusion of these documents on the grounds that they "were not considered as part of the 2017 rulemaking" and "involve litigation—specifically settlement proposals and court orders—over the 2015 Rule and do not convey any substance or information about either the 2015 Rule or the 2017 Rule." Opp. at 7–8. Plaintiffs respond that whether documents relate to litigation over the 2015 Rule or its repeal is "a distinction without a different because BLM's decision to rescind the 2015 Rule was intertwined with litigation over that rule." Reply at 6. Plaintiffs add that the 2017 Rule itself provides that BLM rescinded the 2015 rule, in part, to "eliminate[] the need for further litigation." *Id.*; *see also* 82 Fed. Reg. at 61925.

The 2017 Rule's acknowledgment that it was intended in part to avoid further litigation is strong evidence that information related to the Tenth Circuit litigation was considered by relevant agency personnel. But that reality does not answer the narrower dispute here: whether relevant agency personnel considered *these* documents. It appears that BLM has included in the administrative record numerous litigation-related documents, including what Plaintiffs characterize as "similar agency emails forwarding news articles about milestones in the Tenth Circuit litigation in the administrative record." Reply at 7; *see also id.* at 6 n.5. It is thus not as though the administrative agency excluded litigation documents altogether or otherwise categorically excluded documents in an impermissible manner. *Cf. Cal. ex rel Lockyer*, 2006 WL 708914, at *3. The agency instead included some documents and excluded others, based on its

1 assessment of whether the agency in fact considered specific documents. And the agency is
2 entitled to deference in making this judgment. Plaintiffs have not overcome the presumption of
3 regularity with "clear evidence" simply because they would like different documents—of their
4 choosing—in the record.

### D. Documents Related to Congressional Testimony are Not Part of the Administrative Record.

Finally, Documents 1 and 2 "relat[e] to Congressional testimony about the 2015 Rule," which Plaintiffs contend "provide important details explaining the need and justification for the 2015 Rule." *See* Reply at 7. Specifically, these documents are 2015 emails with substantive attachments received by BLM employees who continued to work at BLM into the new administration and later worked on the 2015 Rule's rescission. *See* Freeman Decl. Ex. B, Docs. 1–2; Mot. at 14. The Federal Defendants respond that "BLM did not consider" these documents, which "predate the 2017 rulemaking by over 18 months and [] involve the agency's efforts to explain and justify the 2015 Rule to Congress; at that time, the agency was not considering rescinding the 2015 Rule." Opp. at 8.

There is no disputing the relationship between the 2015 Rule and 2017 Rule. The 2017 Rule itself invokes purported contemporaneous factors that countenanced against the 2015 Rule when it was implemented. *See, e.g.*, 82 Fed. Reg. at 61925 ("When issuing the 2015 rule, the BLM acknowledged that it already had 'an extensive process in place to ensure that operators conduct oil and gas operations in an environmentally sound manner' and that 'the regulations and Onshore Orders that have been in place to this point have served to provide reasonable certainty of environmentally responsible development of oil and gas resources.'"). But like the disputed documents related to the Tenth Circuit litigation, the narrower issue here is whether relevant agency personnel considered *these* documents. And BLM has apparently included in the 2017 Rule administrative record the administrative record for the 2015 Rule, *see* Reply at 8, which shows the administrative agency has not excluded these particular documents as part of some categorical exercise. And again, the agency is entitled to deference in this judgment and Plaintiffs have not overcome the applicable presumption with "clear evidence" simply because they would

like different documents—of their choosing—in the record.

**IV.   CONCLUSION**

Plaintiffs' motions to complete the administrative record are **GRANTED IN PART** and **DENIED IN PART**.  Defendants shall complete the record in conformance with this order within fourteen days.

**IT IS SO ORDERED.**

Dated: 4/2/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge